# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **WILMA S. ATWELL,** )<br>   Plaintiff )<br> )<br>v. )<br> )<br> )<br> )<br>**JO ANNE B. BARNHART,** )<br>  **Commissioner of Social Security,** )<br>   Defendant ) | Civil Action No. 1:04cv00144<br>**MEMORANDUM OPINION**<br><br><br>By:   Pamela Meade Sargent<br>United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Wilma S. Atwell, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Atwell filed her application for SSI on or about August 16, 1995, alleging disability as of January 1, 1993, based on interstitial cystitis and emotional problems. (Record, ("R."), at 24-30, 72.) Atwell's claim was denied both initially and on reconsideration. (R. at 33-34, 35, 39-41.) Atwell then requested a hearing before an administrative law judge, ("ALJ"). (R. at 42.) The ALJ held a hearing on July 15, 1998, at which Atwell was represented by counsel. (R. at 273-320.)

By decision dated October 15, 1998, the ALJ denied Atwell's claim. (R. at 10-21.) After the ALJ issued his opinion, Atwell pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 4-5.) Atwell then filed an action seeking review of the ALJ's unfavorable decision, which stood as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). By order entered November 21, 2000, the district court remanded the claim to the Commissioner. (R. at 356.) On remand, a supplemental hearing was held on August 1, 2002, at which Atwell was represented by counsel. (R. at 432-94.)

By decision dated September 13, 2002, the ALJ denied Atwell's claim. (R. 341-52.) The ALJ found that Atwell had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 351.) The ALJ found that the medical evidence established that Atwell had severe impairments, namely interstitial cystitis and chronic depression and anxiety, but he found that Atwell did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 351.) The ALJ further found that Atwell's allegations regarding her limitations were not totally credible. (R. at 351.) The ALJ found that Atwell had the residual functional capacity to perform medium work,[1] subject to avoiding hazardous heights or moving machines, climbing, balancing, frequent interaction with the public and exposure to excessive stresses in the work place. (R. at 351.) The ALJ found that Atwell was unable to perform her past relevant work. (R. at 351.) Based on Atwell's age, education, prior work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy which Atwell could perform. (R. at 351-52.) Therefore, the ALJ found that Atwell was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 352.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his opinion, Atwell again pursued her administrative appeals, (R. at 336), but the Appeals Council denied her request for review. (R. at 321-23.) Atwell then filed this action seeking review of the ALJ's unfavorable decision, which stands as the Commissioner's final decision. *See* 20 C.F.R. §

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. § 416.967(c) (2005).

Case 1:04-cv-00144-PMS   Document 17   Filed 09/02/05   Page 3 of 14   Pageid#: 58

416.1481 (2005). The case is before this court on Atwell's motion for summary judgment filed May 19, 2005, and the Commissioner's motion for summary judgment filed July 20, 2005.

*II. Facts and Analysis*

Atwell was born in 1953, (R. at 24), which, at the time of the ALJ's decision classified her as a "younger person" under 20 C.F.R. § 416.963(c). She has a tenth-grade education. (R. at 278.) She subsequently received her general equivalency development diploma, ("GED"). (R. at 76.) She has past work experience in a garment factory. (R. at 92, 281.)

In rendering his decision, the ALJ reviewed records from Bluefield Regional Hospital; Dr. Nasim Ahmed, M.D.; Dr. Assaad Mounzer, M.D.; Princeton Community Hospital; Dr. Patton B. Saul, M.D.; Lewis Gale Hospital; Humana Hospital St. Luke's; Dr. Rodney A. Appell, M.D.; Memorial Hospital of Martinsville & Henry County; Dr. Stuart Berman, M.D.; Dr. Barry C. Yates, M.D.: Dr. Michael Simpkins, M.D.; Dr. Donald R. Williams, M.D., a state agency physician; Dr. Frank Johnson, M.D., a state agency physician; Dr. Ahmed D. Faheem, M.D.; William A. Brezinski, M.A., a licensed psychologist; and Dale M. Rice, M.A., a licensed psychologist.

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe

-4-

impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work.  *See* 20 C.F.R. § 416.920 (2005).  If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy.  *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

In her brief, Atwell argues that the ALJ's findings as to her mental residual functional capacity are not supported by substantial evidence.  (Memorandum In Support Of Motion For Summary Judgment,  ("Plaintiff's Brief"), at 3-10.) Because Atwell is challenging the ALJ's finding as to her mental residual functional capacity only, I will not address the medical evidence or the ALJ's findings as to her physical condition other than to note that the record contains evidence from Atwell's treating surgeon stating that Atwell was expected to make a full recovery from the surgery to remove her bladder with no work-related restrictions on her activities. (R. at 233-34.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Based on my review of the record, I find that substantial evidence supports the ALJ's finding as to Atwell's mental residual functional capacity, including his weighing of the medical evidence. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(d)(2) (2005). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ in this case found that Atwell suffered from depression and anxiety.

-6-

(R. at 347.) The ALJ found that, as a result of these impairments, Atwell had the residual functional capacity to perform medium work subject to avoiding frequent interaction with the public and exposure to excessive stresses in the work place. (R. at 348, 351.) In reaching these findings the ALJ stated that he was giving little weight to the opinions of William A. Brezinski, M.A., and greater weight to the opinions of Dr. Kessler, a expert who testified at Atwell's supplemental hearing, Dale Rice, M.A., and Wyatt. (R. at 348.)

The record reveals that Atwell treated with Dr. Barry C. Yates, M.D., a psychiatrist, beginning in 1996. (R. at 363-70, 379-82.) While Dr. Yates's handwritten notes are difficult to read, it appears that he first evaluated Atwell on January 29, 1996. (R. at 369-70.) Atwell complained of being unable to sleep and poor concentration. (R. at 370.) Atwell also claimed that she feared going out in public alone. (R. at 369.) Dr. Yates diagnosed generalized anxiety and depression and prescribed Serzone. (R. at 369.)

Atwell did not see Dr. Yates again until March 31, 1997. (R. at 368.) Dr. Yates's notes reflect that, on that date, Atwell reported that she did not feel depressed and had no loss of enjoyment. (R. at 368.) Dr. Yates continued to see Atwell through August of 1998, but his notes make little mention of any psychiatric symptoms or diagnoses, other than containing notes regarding various antidepressant and anxiety medications. (R. at 364-67.) On August 25, 1998, Dr. Yates's notes state that he was adding a diagnosis of depression. (R. at 364.) On April 15, 1999, Dr. Yates's notes reflect that Atwell complained of feeling nervous, very anxious and depressed. (R. at 362.) None of Dr. Yates's notes from this period indicate any restrictions on Atwell's

work-related abilities.

On January 5, 1998, Melinda M. Wyatt, M.S., a licensed psychologist, evaluated Atwell. (R. at 239-43.) Atwell complained of exhaustion, depressed mood, tearfulness, anhedonia, impaired decision making and impaired concentration and memory. (R. at 239.) She stated, "I just can't deal with crowds." (R. at 239.) Oddly, Atwell denied ever receiving any psychiatric treatment or taking any medication. (R. at 240.)

Wyatt stated that Atwell was cooperative and appeared motivated. (R. at 241.) Atwell's mood appeared depressed, and she was tearful throughout her interview. (R. at 241.) Her affect was flat, and her thought processes was organized and logical. (R. at 241.) There was no evidence of though content impairment, hallucinations or delusions. (R. at 241.) Atwell's insight and concentration appeared to be adequate. (R. at 241.) Wyatt did note that Atwell's judgment appeared impaired. (R. at 241.) Wyatt also noted that Atwell's immediate, recent and remote memory were all mildly impaired. (R. at 241.)

The Weschler Adult Intelligence Scale - Revised, ("WAIS-R"), test and the Wide Range Achievement Test - Revision 3 , ("WRAT3"), were administered. (R. at 241-42.) Atwell's verbal IQ score was 86, her performance IQ score was 74, and her full-scale IQ score was 80, which placed her in the low average range of intellectual functioning. (R. at 241.)

Wyatt diagnosed Atwell as suffering from major depressive disorder, single

-8-

episode. (R. at 242.) There is no evidence that Wyatt placed any restrictions on Atwell's work-related abilities.

On February 6, 1998, a state agency psychologist[2] completed a Psychiatric Review Technique form, ("PRTF"), on which he stated that Atwell did not suffer from a severe mental impairment. (R. at 49-57.) This psychologist also stated that Atwell experienced no restriction of activities of daily living, only slight difficulties in maintaining social functioning, seldom experienced deficiencies of concentration, persistence or pace and never experienced episodes of deterioration or decompensation. (R. at 56.)

On April 9, 1998, Atwell was evaluated by Dr. Ahmed D. Faheem, M.D., a psychiatrist. (R. at 260-62.) Atwell complained of severe anxiety, depression, insomnia and mood swings for the past 10 years. (R. at 260.) Atwell stated that she felt tired, run down, depressed, hopeless and helpless with no energy. (R. at 260.) Atwell complained that sometimes her thoughts raced and she could not concentrate. (R. at 260.) She stated that she did not like to be around other people. (R. at 260.) Atwell also complained of suffering from panic attacks. (R. at 260.)

Atwell was tense, anxious, edgy and labile, but mostly depressed. (R. at 261.) Her attention and concentration were impaired. (R. at 261.) Atwell appeared to be functioning in the dull to borderline range of intelligence. (R. at 261.) Dr. Faheem diagnosed Atwell with major affective disorder, bipolar mixed, and generalized anxiety disorder. (R. at 262.) Dr. Faheem placed Atwell's Global Assessment of

[2]The psychologist's signature is not legible. (R. at 49.)

Case 1:04-cv-00144-PMS Document 17 Filed 09/02/05 Page 9 of 14 Pageid#: 64

Functioning, ("GAF"), score at 55.[3]

Dr. Faheem stated that Atwell mostly had problems with recurrent mood swings, consisting of manic depressive illness, as well as suffering from generalized anxiety disorder. (R. at 262.) He also stated that Atwell was functioning in the borderline range of intelligence. (R. at 262.) Dr. Faheem stated that, "I feel that a combination of her physical and psychiatric impairment make her disabled from being gainfully employed. (R. at 262.)

On April 9, 1998, Atwell also was evaluated by Patsy J. Wilkerson, M.A., a licensed psychologist, and Stephanie K. Ford, M.A., a supervised psychologist. (R. at 263-67.) Atwell was alert and oriented. (R. at 263.) He recent and remote memory was intact but her immediate memory was impaired. (R. at 263.) Her attention was average, but her concentration was slightly impaired. (R. at 263-64.) Her mood was anxious and depressed, and her affect was blunted. (R. at 264.) Her judgment was average. (R. at 264.) Atwell stated that she had been prescribed Serzone, but she stated that she was not compliant with taking this medication. (R. at 264.)

The WAIS-R, WRAT3, Bender Visual Motor Gestalt Test and House-Tree-Person Drawing (H-T-P) were performed. (R. at 263.) Atwell's verbal IQ score was 77, her performance IQ score was 76, and her full-scale IQ score was 76, which placed

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-10-

her in the borderline range of intellectual functioning. (R. at 265.)

On October 10, 2001, Atwell was evaluated by William A. Brezinski, M.A., a licensed psychologist. (R. at 385-401.) Atwell reported that she had been treated by Dr. Yates for a number of years. (R. at 386.) Atwell stated that she took Serzone and Xanax, but she claimed that the Xanax "hyped" her up. (R. at 386.) Atwell also told Brezinski that Dr. Yates had diagnosed her with bipolar disorder. (R. at 386.) Atwell was cooperative. (R. at 387.) Her affect was restricted, and her mood was depressed. (R. at 387.) Atwell's thought processes and memory were intact, but her judgment and insight were moderately impaired. (R. at 387.)

Brezinski administered the Wechsler Adult Intelligence Scale - III, ("WAIS-III"), test, on which Atwell's verbal IQ score was 81, her performance IQ score was 73 and her full-scale IQ score was 75. (R. at 387.) As a result, Brezinski stated that Atwell functioned in the borderline range of intelligence. (R. at 387.) Brezinski also administered the Pain Patient Profile, ("P/3"), and the Minnesota Multiphasic Personality Inventory - Second Edition, ("MMPI-2"). (R. at 388.) According to Brezinski, the P/3 suggested that Atwell was tense, impatient and irritable. (R. at 388.)

Brezinski diagnosed Atwell with bipolar affective disorder, mixed, generalized anxiety disorder and borderline intellectual functioning. (R. at 388.) He stated that the combination of the bipolar disorder, in conjunction with Atwell's chronic pain and generalized anxiety, rendered her disabled from all substantial gainful employment.

-11-

(R. at 389.) Brezinski placed Atwell's GAF at 50.[4] (R. at 390.)

Brezinski also completed an assessment of Atwell's work-related mental abilities. (R. at 392-95.) According to Brezinski, Atwell's abilities were seriously limited or nonexistent in all categories other than for a limited, but satisfactory, ability to remember work-like procedures, to understand and remember very short and simple instructions, to make simple work-related decisions, to ask simple questions or request assistance, to be aware of normal hazards and take appropriate precautions, to understand and remember detailed instructions and to adhere to basic standards of neatness and cleanliness. (R. at 393-94.) Brezinski also stated that Atwell suffered from moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning and frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (R. at 394.) Brezinski also reported that Atwell had suffered repeated episodes of deterioration or decompensation in work or work-like setting. (R. at 394.)

On February 27, 2002, Atwell was evaluated by Dale M. Rice, M.A., a licensed psychologist. (R. at 402-08.) Atwell complained of depression, a lot of anxiety, difficulty sleeping and no drive. (R. at 402.) At the time of Rice's evaluation, Atwell stated that she was receiving no treatment and taking no medications. (R. at 402.) Atwell stated that she stopped seeing her psychiatrist because "nothing was helping." (R. at 403.) Atwell's attitude was good, and she was cooperative. (R. at 404.) She maintained good eye contact and related fairly well. (R. at 404.) She was alert and

---

[4] A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... or any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

oriented to person, place, time and date. (R. at 404.) Her mood was depressed and her affect was restricted. (R. at 404.) Her thought processes appeared logical and coherent, with not indication of delusions, obsessive thoughts or compulsive behaviors. (R. at 404.) Atwell's insight was fair, and her judgment was average. (R. at 404.) Atwell denied any suicidal or homicidal ideations. (R. at 404.) Atwell's immediate, recent and remote memory, concentration and abstract reasoning all were normal. (R. at 404.)

Rice administered the MMPI-2, but stated that the results were invalid. (R. at 405.) Rice stated that Atwell was mildly depressed and diagnosed her with a depressive disorder, not otherwise specified, and borderline intellectual functioning. (R. at 406.) Rice also completed an assessment of Atwell's mental work-related abilities on which he stated that Atwell had no or only mild limitations in all areas other than a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting. (R. at 407-08.)

Daniel N. Kessler, Psy. D., a licensed clinical psychologist, testified as an expert at Atwell's 2002 hearing based on his review of the evidence of record. (R. at 466-85.) Kessler stated that, while the mental health professionals who had treated Atwell did not agree as to Atwell's diagnosis, there was agreement that she suffered from problems with mood functioning. (R. at 467.) Kessler stated that he did not agree with a diagnosis of bipolar disorder, and he thought, instead, that Atwell suffered from a major depressive disorder or depressive disorder not otherwise specified. (R. at 467-68.) Kessler stated that, in his opinion, Atwell did experience moderate deficits in social functioning. (R. at 469.) Kessler also stated that he found Rice's assessment of Atwell's mental residual functional capacity more credible than Brezinski's. (R. at

471.) In particular, he testified that Brezinski's assessment was not supported by his narrative report. (R. at 476.) Kessler also stated that Atwell should not work where she had to deal with people on an intense and daily basis. (R. at 484.)

Based on the above, I find that substantial evidence supports the ALJ's weighing of the psychological evidence, as well as his finding as to Atwell's mental residual functional capacity. For these reasons, I also find that substantial evidence supports his finding that she was not disabled.

### *III. Conclusion*

For the foregoing reasons, Atwell's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED: This 2nd day of September 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE